UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>MICHAEL D'ANGELO,<br><br>              Defendant. | **ORDER**<br><br>23 Cr. 327 (PGG) |
| UNITED STATES OF AMERICA<br><br>-against-<br><br>DERON BOONE,<br><br>              Defendant. | 23 Cr. 427 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

      Defendants Michael D'Angelo and Deron Boone are charged with felon-in-possession, in violation of 18 U.S.C. § 922(g)(1). They have each moved to dismiss in light of the Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022). For the reasons stated below, their motions to dismiss will be denied.

## BACKGROUND

I.    **ARREST AND INDICTMENT**

    A.    **Michael D'Angelo**

      On May 19, 2023, a New Jersey state court judge issued an arrest warrant for D'Angelo for offenses he allegedly committed in November 2022 that involved impersonating a police officer, a home invasion, and theft of property. (D'Angelo Cmplt., 23 Cr. 327 (Dkt. No. 1) ¶ 3(a)). That same day, in connection with these same offenses, a Bronx County Supreme Court justice issued a search warrant for D'Angelo's residence in the Bronx. (Id. ¶ 3(b)) On

May 22, 2023, officers of the New York City Police Department (the "NYPD") entered D'Angelo's home in the Bronx to execute the search warrant. (Id. ¶ 3(c)) Inside the living room, officers found a black bag containing a handgun loaded with six .45 caliber bullets. (Id. ¶¶ 3(e), (g)) Officers also found "three police scanners, black gloves, zip ties, pepper spray, and a police badge." (Id. ¶ 3(f)) After his arrest, D'Angelo received Miranda warnings. (Id. ¶ 3(i)) He then told officers that he lived alone in the residence and that the gun and ammunition belonged to him. (Id.)

In a June 28, 2023 indictment, D'Angelo was charged with felon in possession of ammunition – the six .45 caliber bullets recovered during the search – in violation of 18 U.S.C. § 922(g)(1). (D'Angelo Indictment, 23 Cr. 327 (Dkt. No. 5) ¶ 1)

According to the Government, D'Angelo has a February 23, 1994 conviction for attempted second degree burglary, and a March 22, 1994 conviction for second degree burglary, both in violation of New York Penal Law 140.25. (D'Angelo Cmplt., 23 Cr. 327 (Dkt. No. 1) ¶ 5; D'Angelo Govt. Opp., 23 Cr. 327 (Dkt. No. 20) at 2)

    **B.**    **Deron Boone**

The Complaint against Defendant Boone alleges that on February 14, 2023, two NYPD officers responded to a 911 call in which the caller reported gunshots in the vicinity of 1924 Webster Ave, Apt. 19G, in the Bronx. (Boone Cmplt., 23 Cr. 427 (Dkt. No. 1) ¶ 4(a)) After knocking on the front door of that apartment, officers encountered Boone and another man inside the apartment. (Id. ¶ 4(b)). Boone and the other man told the officers that, at the time of the shots, a person they did not know had been inside the apartment. (Id. ¶ 4(c)) According to them, a second unknown person had fired shots from the hallway outside the apartment into the apartment. (Id.) In response, the unknown individual inside the apartment fired shots out through the front door of the apartment. (Id.) The shooter inside the apartment left before the

police officers had arrived. (Id.) The officers observed multiple shell casings near the door of the apartment as well as bullet holes in the apartment door that "appeared to show bullets had both entered and exited the [a]partment." (Id. ¶ 4(d))

The officers obtained written consent to search the apartment. (Id. ¶ 4(e)) During the search, officers observed a safe in a bedroom that Boone had identified as his bedroom. (Id. ¶ 4(g)) The officers asked Boone to open the safe, but he refused to do so. (Id.) The officers then obtained a search warrant for the safe, opened it, and found a 9 mm. pistol. (Id. ¶¶ 4(j), 5) The pistol was analyzed for DNA, and the New York City Medical Examiner's Office determined that the Defendant's DNA is on the pistol. (Id. ¶ 6)

Magistrate Judge Figueredo issued a warrant for Boone's arrest on July 24, 2023 (23 Cr. 427, Dkt. No. 2), and Boone was arrested on August 4, 2023. In an August 17, 2023 indictment, Boone is charged with felon in possession in violation of 18 U.S.C § 922(g)(1). (Boone Indictment, 23 Cr. 427 (Dkt. No. 5) ¶ 1)

Boone has a February 19, 1990 conviction for murder in the second degree, in violation of New York Penal Law 125.25, and 2010 convictions for criminal possession of a weapon, in violation of New York Penal Law 265.03(3), and assault in the third degree, in violation of New York Penal Law 120.00(1). (Boone Br., 23 Cr. 427 (Dkt. No. 15) at 1)

II.     **PROCEDURAL HISTORY**

The D'Angelo indictment was filed on June 28, 2023 (D'Angelo Indictment, 23 Cr. 327, Dkt. No. 5), and the Boone indictment was filed on August 17, 2023. (Boone Indictment, 23 Cr. 427, Dkt. No. 5)

Boone moved to dismiss on October 2, 2023 (Boone Motion, 23 Cr. 427, Dkt. No. 15), and D'Angelo moved to dismiss on October 16, 2023. (D'Angelo Motion, 23 Cr. 327, Dkt. No. 18) On November 27, 2023, this Court heard oral argument on Defendants' motions.

**DISCUSSION**

D'Angelo and Boone have moved to dismiss the felon in possession charges against them in light of the Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022). (D'Angelo Br., 23 Cr. 327 (Dkt. No. 19) at 1; Boone Br., 23 Cr. 427 (Dkt. No. 15) at 1)

**I.    BRUEN**

In Bruen, the Supreme Court analyzed the constitutionality of New York's "may issue" system for regulating the public carry of handguns. Bruen, 142 S. Ct. at 2122-24. As the Bruen court explains, most states employ a "shall issue" system for granting public carry gun permits, in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." Id. at 2123. New York uses a "may issue" system, however, in which "authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license." Id. at 2124. In New York, for example, applicants for a public carry license must demonstrate "proper cause" by showing "'a special need for self-protection distinguishable from that of the general community.'" Id. at 2123 (quoting In re Klenosky, 75 A.D.2d 793, 793 (1st Dep't 1980)).

In Bruen, the Second Circuit rejected plaintiffs' challenge to the New York law, citing its earlier decision in Kachalsky v. Cnty. of Westchester, 701 F.3d 81 (2d Cir. 2012), which held that "New York's proper cause requirement does not violate the Second Amendment." New York State Rifle & Pistol Ass'n, Inc. v. Beach, 818 F. App'x 99, 100 (2d Cir. 2020) (citing Kachalsky, 701 F.3d at 100-01). As the Supreme Court's Bruen decision explains, the Second Circuit's analysis in Kachalsky involves a "two-step" procedure in which a

4

court first considers whether a challenged law falls within "the original scope of the [Second Amendment] right [to bear arms] based on its historical meaning," and then applies "means-end scrutiny," taking into account, among other things, the governmental interests at stake in the challenged law. Id. at 2126-27.

The Bruen court rejects the second step of the Second Circuit's two-part test. According to the Supreme Court, the "second step" is "inconsistent" with the "historical approach and . . . [the] rejection of means-end scrutiny" set forth in District of Columbia v. Heller, 554 U.S. 570 (2008). Id. at 2929. The Bruen court goes on to state that

> [w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." Konigsberg v. State Bar of Cal., 366 U.S. 36, 50, n. 10 (1961).

Id. at 2129-30. Applying this historical standard to New York's permit law, the Court concludes that New York had not "met [its] burden to identify an American tradition [of firearm regulation] justifying [New York's] proper-cause requirement." Id. at 2156.

## II.     ANALYSIS

According to Defendant D'Angelo and Boone, the felon in possession charges against them must be dismissed because – under Bruen's historical standard – Section 922(g)(1) is unconstitutional both on its face and as applied to them. (D'Angelo Br., 23 Cr. 327 (Dkt. No. 19) at 1-2; Boone Br., 23 Cr. 427 (Dkt. No. 15) at 2-3)

The Government responds that Section 922(g)(1) is consistent with "'this Nation's historical tradition of firearm regulation.'" (D'Angelo Govt. Opp., 23 Cr. 327 (Dkt. No. 20) at 3-4, 11 (quoting Bruen, 142 S. Ct. at 2126); see also Boone Govt. Opp., 23 Cr. 427 (Dkt. No. 23) at 1-2, 13) The Government further argues that this Court is, in any event, bound

to follow United States v. Bogle, 717 F.3d 281 (2d Cir. 2013) (per curiam), in which the Second Circuit held that "'§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons.'"  (D'Angelo Govt. Opp., 23 Cr. 327 (Dkt. No. 20) at 4 (quoting Bogle, 717 F.3d 281-82); see also Boone Govt. Opp., 23 Cr. 427 (Dkt. No. 23) at 2)

Contrary to Defendants' argument here, Bruen and relevant Supreme Court precedent do not suggest that felons have an unbridled right to possess firearms under the Second Amendment.

In District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court found that the Second Amendment connotes an individual right to keep and bear arms independent of any service in a militia.  Heller, 554 U.S. at 595, 598-600.  The Heller Court thus ruled unconstitutional D.C. statutes outlawing handgun possession in the home.  Id. at 635.  In so ruling, the Supreme Court went out of its way to make clear that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."  Heller, 554 U.S. at 626.  Indeed, the Heller court repeatedly emphasizes that the Second Amendment right extends only to "law-abiding" citizens possessing firearms for "lawful" purposes.  See, e.g., id. at 635 ("The Second Amendment . . . elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."); id. at 625 (noting that Supreme Court precedent provides that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes," a reading that "accords with the historical understanding of the scope of the right").

And in McDonald v. City of Chicago, 561 U.S. 742, 786 (2010), the Court "repeat[ed] [its] assurances" that Heller "did not cast doubt on such longstanding regulatory

measures as 'prohibitions on the possession of firearms by felons.'"  McDonald, 561 U.S. at 786 (quoting Heller, 554 U.S. at 626).

Defendants contend that the Supreme Court's pronouncements in Heller and McDonald are mere dicta that "have no effect on this Court's responsibility to engage in the independent analysis that Bruen demands."  (Boone Br., 23 Cr. 427 (Dkt. No. 15) at 12; see also D'Angelo Br., 23 Cr. 327 (Dkt. No. 19) at 18).

Acknowledging that the statements in Heller and McDonald about "possession of firearms by felons" are dicta, it is dicta that this Court is not free to ignore.  In Bogle, the Second Circuit relied on this same language in holding that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons."  Bogle, 717 F.3d at 281-82.  This Court is "bound by the decisions of prior [Second Circuit] panels until such time as they are overruled either by an en banc panel . . . or by the Supreme Court."  United States v. Wilkerson, 361 F.3d 717, 732 (2d Cir. 2004).  Accordingly, this Court is bound by Bogle absent proof that Bruen sub silentio overruled Bogle's holding that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons."  Bogle, 717 F.3d at 281-82.

Bruen does not cast doubt on Bogle's holding.

As an initial matter, the Bogle court did not employ the "means-end scrutiny" analysis rejected by the Supreme Court in Bruen.  Bruen, 142 S.Ct. at 2129; see Bogle, 717 F.3d at 281-82.  Instead, the Bogle court relied on Supreme Court pronouncements in Heller and McDonald that are not displaced in Bruen.  Bogle, 717 F.3d at 281.

Moreover, Bruen does not cast doubt on the constitutionality of laws aimed at excluding felons from obtaining carry licenses.  For example, the Bruen court states that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States'

7

'shall-issue' licensing regimes" for firearm ownership, which, among other things, "often require applicants to undergo a background check or pass a firearms safety course . . . designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" Bruen, 142 S.Ct. at 2138 n.9 (quoting Heller, 554 U.S. at 635).  In other words, the Bruen court does not cast doubt on the constitutionality of mandatory background checks aimed at identifying and excluding applicants with criminal records.

And the Bruen court – as in Heller and McDonald – repeatedly and explicitly associates the Second Amendment right with "law-abiding" citizens.  See, e.g., id. at 2122 ("[P]etitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense.  We too agree. . . ."); id. at 2131 ("The Second Amendment . . . 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." (quoting Heller, 554 U.S. at 635)); id. at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms.").  Acknowledging that these statements are dicta, they are relevant to determining the reach of Bruen's holding.

Finally, it is worth noting that three members of the Bruen majority wrote separately to emphasize that nothing in the majority opinion has "disturbed anything that we said in Heller or McDonald."  Bruen, 142 S.Ct. at 2157 (Alito, J. concurring); id. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." (quoting Heller, 554 U.S. at 626))

8

Given this record, this Court cannot find that Bruen has overruled Bogle. Bogle thus remains binding precedent in this Circuit. See United States v. Nelson, No. 22-CR-436 (JGK), 2023 WL 6520378, at *3 (S.D.N.Y. Oct. 4, 2023) ("[T]his Court cannot disregard the binding precedent from the Court of Appeals in Bogle that Section 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons."); United States v. Craft, No. 23-CR-00178 (PMH), 2023 WL 6215326, at *3 (S.D.N.Y. Sept. 25, 2023) (same); United States v. Davila, No. 23-CR-292 (JSR), 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023) (same); United States v. Hampton, No. S2 21 CR. 766 (JPC), 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023) (same); United States v. Garlick, No. 22-CR-540 (VEC), 2023 WL 2575664, at *5 (S.D.N.Y. Mar. 20, 2023) (same); United States v. King, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022) (same).

## CONCLUSION

For the reasons stated above, D'Angelo and Boone's motions to dismiss are denied. The Clerk of Court is directed to terminate the motions (23 Cr. 327 (Dkt. No. 18); 23 Cr. 427 (Dkt. No. 15))

Dated: New York, New York
December 31, 2023

SO ORDERED.

*Paul S. Gardephe*

Paul G. Gardephe
United States District Judge